IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOARD OF EDUCATION OF HOMEWOOD FLOSSMOOR COMMUNITY HIGH SCHOOL DISTRICT NO. 233,<br><br>Plaintiff,<br>v.<br><br>ILLINOIS STATE BOARD OF EDUCATION and ALEX B., by and through his parents and next friends ANNE AND TRACY S.,<br><br>Defendant. | Case No. 06 C 0676<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

The Board of Education of Homewood Flossmoor Community High School District 233 ("Homewood Flossmoor") appeals a decision by an administrative hearing officer overturning its individual education plan ("IEP") for Alex B. ("Alex"). After Alex experienced problems at his local public school, especially during his seventh grade year, the elementary district sent Alex to a private school, Elim Christian School ("Elim") for his eighth grade year. Homewood Flossmoor became responsible for Alex's education as of his ninth grade year. At Alex's IEP review at the end of his eighth grade year, Homewood Flossmoor determined that he should attend the Fundamentals Program, a special education program at Homewood Flossmoor's community high school, the next year. Alex's mother appealed the decision to an administrative hearing officer, who reversed it and ordered that Alex instead be sent to Elim. In doing so, the officer found that the IEP did not provide Alex with a free and appropriate education as required under the Individuals with Disabilities

1

Education Act ("IDEA"), 20 U.S.C. § 1414 et seq. Homewood appealed the hearing officer's decision to this Court under 20 U.S.C. § 1415(i)(2).

The Parties each filed Motions for Summary Judgment. The Court initially found it unclear whether the hearing officer applied the correct standard as announced by the Supreme Court in *Bd. of Educ. V. Rowley*, 458 U.S. 176, 207 (1982) in reviewing the IEP and thus denied the Parties' motions and remanded the decision to the hearing officer for clarification. On remand, the hearing officer stated that he applied the *Rowley* standard and reiterated his conclusion that Alex's placement at Homewood Flossmoor was not reasonably calculated to provide him with an educational benefit. It is undisputed that this is the proper legal standard. The Motions for Summary Judgment are once again before the Court.

## STATEMENT OF FACTS

Alex, who was fifteen at the time this litigation began, suffers from mental retardation, attention deficit hyperactivity disorder, pervasive developmental delay, and seizure disorder. Defendant Statement of Facts ("Def. 56.1") at ¶¶ 1-2; Plaintiff Statement of Facts ("Pl. 56.1") at ¶ 1. He is eligible to receive special education services under the IDEA. Pl. 56.1 at 1. Alex attended a public school at Homewood School District 153 from his early childhood years through seventh grade. Pl. 56.1 at ¶ 3.

While at public school, Alex was educated in a self-contained special education classroom but had lunch and physical education with regular education students. Def. 56.1 at ¶ 3. He exhibited behavioral problems that impeded his ability to learn in the classroom and he did not make significant academic progress. *Id*. at ¶¶ 4-5. Specifically, Alex is easily distracted, reacts to noises and requires rigid structure and routine in his daily activities. *Id*. at ¶¶ 9, 13. He exhibits immature

2

and inappropriate behavior in group settings, especially with non-disabled peers, and has demonstrated destructive behaviors. *Id*. at ¶¶ 10-11. School staff became concerned with Alex's behavior. Pl. 56.1 at ¶ 5. These behavioral problems escalated during Alex's seventh grade year.

In August of 2004, Alex's IEP team met to review Alex's education program and determined that the elementary district was unable to meet his needs. Pl. 56.1 at ¶¶ 6-7. The team placed Alex at Elim Christian School ("Elim") for his eighth grade year. *Id*. at ¶ 7. Elim serves only special education students. *Id*. at ¶ 8. Classes contain approximately eight students and each class is staffed by a teacher and an aide. *Id*. The students in Alex's class ranged in age from 12 to 15. *Id*. In addition to academics, Elim offers pre-vocational and vocational programs. Def. 56.1 at ¶ 14. However, Alex did not participate in vocational activities during his eighth grade year. Pl. 56.1 at ¶ 32. While at Elim, Alex made significant educational gains and showed significant improvement in his behavior. Def. 56.1 at ¶¶ 7-8. Although he met all of his goals for the year, he was retained in eighth grade for the 2005-2006 school year. Pl. 56.1 at ¶ 31.

Defendant Homewood Flossmoor took responsibility for Alex's education as of his ninth grade year. At the annual review of Alex's IEP on May 18, 2005, near the end of his eighth grade year, the IEP team recommended that he be placed in the Fundamentals Program at Homewood Flossmoor Community High School District 233 for the following year. *Id*. at ¶ 10. The Fundamentals Program is a self-contained special education program. *Id*. at ¶¶ 11-13. The students in the program range in age from 14 to 18 years old. *Id*. at ¶ 15. Classes are staffed with a teacher and an aide, and class sizes do not exceed ten students. *Id*. at ¶ 17. The Fundamentals Program has a vocational component – students are able to get jobs and are provided with a job coach. *Id*. at ¶¶ 12-13, 28. The program is offered at two levels: Fundamentals I for lower functioning students and

Fundamentals II for higher functioning students. *Id*. at ¶ 14. Although Alex is a higher functioning student, his team recommended placing him in Fundamentals I to facilitate a smoother transition. *Id*. at ¶ 16.

Fundamentals students ride to school in a designated bus. An aide meets the bus when it arrives and walks the students to class. *Id*. at ¶ 19. The Fundamentals classes are located in close proximity to each other in a different section of the high school than regular education classes in order to limit distractions and minimize unstructured time in the hallways. *Id*. at ¶ 20. During transition periods when students are in the hallway, there is one aide present per two students. *Id*. at ¶ 21. Alex's IEP team recommended he have limited participation in unstructured activities. *Id*. at ¶ 26.

If placed in the Fundamentals Program, Alex would be mainstreamed for lunch and physical education. Def. 56.1 at ¶ 12; Pl.56.1 at ¶ 23. There are also opportunities for mainstreaming during other school activities and a co-curricular group that orchestrates fundraisers and activities with regular education peers. Pl. 56.1 at ¶¶ 23, 27. Fundamentals students are also mainstreamed into regular classes as appropriate. *Id*. at ¶ 25.

Alex's mother objected to his removal from Elim and his placement at Homewood Flossmoor and requested a due process hearing as provided for under the IDEA to review the placement. Def. 56.1 at ¶ 34. She also invoked his right to stay-put placement under the IDEA and as such, Alex remains at Elim pending the outcome of these proceedings. *Id*. at ¶¶ 35-36.

A hearing officer heard testimony and received exhibits from both parties in an administrative hearing before the Illinois State Board of Education. The officer noted that Alex is easily distracted, especially by noise and changes in his routine and has a history of annoying and

4

alienating regular education peers when given the opportunity to interact with them. Administrative Record ("Admin. Rec.") at 12-13. He found that the Fundamentals Program is "very similar" to the program at the elementary district, which did not work for Alex. *Id*. Thus, the officer found that the Fundamentals Program was inappropriate for Alex and would likely fail for two main reasons: (1) the large Homewood Flossmoor High School complex would likely expose Alex to too much noise and distraction; and (2) it would be a mistake to place Alex in mainstream settings for lunch and P.E., because in the past his interactions with non-disabled peers have been highly problematic. *Id*. at 12-14.

## STANDARD OF REVIEW

Under the IDEA, the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(c). The IDEA requires a different summary judgment standard than that of Federal Rule of Civil Procedure 56(c). Where, as here, neither party presents new evidence to the district court, "[t]he motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir. 1994).

The applicable standard of review is not "an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. v. Ross*, 486 F.3d 267, 270 (7th Cir. 2007) (*citing Rowley*, 458 U.S. at 206). Indeed, "courts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Heather S. v. State of Wis.*, 125 F.3d 1045, 1054 (7th Cir. 1997) (*quoting*

5

*Rowley*, 458 U.S. at 208). Thus, courts must give "due weight" to the determinations made during the state administrative process. *Id.* What constitutes "due weight" varies from case to case. *Alex R. v. Forrestville Valley Cmty. Unit Sch. Dist.*, 375 F.3d 603, 612 (7th Cir. 2004). When a district court relies on new evidence, it should defer less to the administrative decision. *Id.* However, in cases such as this, "where the district court does not take new evidence and relies solely on the administrative record, it owes considerable deference to the hearing officer, and may set aside the administrative order only if it is 'strongly convinced that the order is erroneous." *Id.* (*citing School Dist. v. Z.S.*, 295 F.3d 671, 675 (7th Cir. 2002). "This level of review is akin to the standards of clear error or substantial evidence." *Id.* As the party challenging the outcome of the administrative proceedings, Homewood Flossmoor bears the burden of proving its claims by a preponderance of the evidence. *See*, *e.g.*, *Heather S.*, 125 F.3d at 1052-53.

## DISCUSSION

Under the IDEA, in order to receive federal funding, school districts must provide disabled children with a free and appropriate public education in the least restrictive environment appropriate. 20 U.S.C.A. § 1412(a)(1), (5); *Beth B. v. Van Clay*, 282 F.3d 493, 497 (7th Cir. 2002). The Act requires that school districts develop an individualized education program for each disabled student in consultation with the child's parents, teachers, and school administrators. 20 U.S.C. § 1414(d). To determine whether an IEP is appropriate under the IDEA, the Court must address two questions: 1) whether the state has complied with the procedures set forth in the Act; and 2) whether the IEP was reasonably calculated to enable the child to receive educational benefits. *Rowley*, 458 U.S. at 206-07. The parties agree that Homewood Flossmoor followed the procedures proscribed by the

6

IDEA; so this court addresses only whether Alex's IEP was reasonably calculated to provide him with educational benefits.

**Free and Appropriate Public Education**

The IDEA requires that school districts provide disabled students with a free and appropriate public education. 20 U.S.C.A. § 1412(a)(1); *Beth B.*, 282 F.3d at 497. An education is appropriate if it "consists of specialized instruction and related services which are individually designed to provide educational benefit" to the child. *Rowley*, 458 U.S. at 3048. That is, "the education to which access is provided [must] be sufficient to confer some educational benefit upon the handicapped child." *Rowley*, 450 U.S. at 200. To meet this standard, "an IEP must respond to all significant facets of a student's disability, both academic and behavioral." *Alex R.*, 375 F.3d at 613. However, school districts need only provide an appropriate education, not the best possible education. *Heather S.*, 125 F.3d at 1057.

Here, the hearing officer concluded that Homewood Flossmoor's IEP was not reasonably calculated to provide Alex with educational benefits. He noted that Alex has specific needs in an educational environment including "a small setting, avoidance of noise, a very structured classroom, repetition of routine, and elimination of distractions." Admin. Rec. at 13. He found that the Fundamentals Program is very similar to the middle school program that was a failure for Alex. *Id*. at 12. Thus, he held that the Fundamentals Program "is not reasonably calculated to provide Alex with an educational benefit" because "[i]t is not a benefit to put him into an environment in which he has already shown he cannot be successful." *Id*. at 13.

Homewood Flossmoor failed to show by a preponderance of the evidence that the hearing officer's decision was in error. Specifically, the record supports the hearing officer's findings that

7

(1) prior to his move to Elim, Alex's educational program at the elementary district failed to provide him with educational benefits; (2) the Fundamentals Program is very similar to the failed program at the elementary district; and (3) therefore, the Fundamentals Program is not reasonably calculated to provide Alex with educational benefits.

*Alex did not Receive Educational Benefits from the Middle School Program at the Elementary District*

The hearing officer found that prior to his move to Elim, Alex did not receive educational benefits from the middle school program at the elementary district, and the record supports this finding. *Id*. at 13. The record shows that while attending public school, Alex had significant behavioral problems that impeded his ability to progress academically. Def. 56.1 at ¶ 4; Admin. Rec. at 173, 467. To this end, he did not make significant academic progress, was frustrated, and acted out, especially in unstructured settings such as lunch and physical education where he had contact with regular education students. Admin. Rec. at 173, 431-433, 436, 462, 469, 472, 481-82. Indeed, one report states that he academically progressed only one to two months over three years. *Id*. at 173. When he was around regular education students, Alex touched them inappropriately, invaded their personal space and generally irritated them. *Id*. at 415, 431, 472, 483-84. Disciplinary reports show that he threatened to rape a student's sister and drew pictures of a student's disfigured genitals. *Id*. at 417-418, 482-83. His mother testified that his behavioral problems were constant and that he was unable to be in a mainstream setting for even five minutes without behaving inappropriately. *Id*. at 483. She sometimes received two to three phone calls a day regarding Alex's behavioral problems, noting that they started in unstructured settings and when Alex was around regular education students but "blossomed over" into the special education room. *Id*. at 481. The elementary district's psychologist, who evaluated Alex after he moved to Elim, told the district that

"it is apparent that this alternative setting has been necessary for him to be successful, make progress, and have his specialized educational needs met." *Id*. at 162. This evidence is sufficient to support a finding that the elementary district's program was not reasonably calculated to provide Alex with educational benefits.

*The Fundamentals Program is Similar to the Failed Program at the Elementary District*

The hearing officer found that Homewood Flossmoor's Fundamentals Program is similar to the elementary district's program and thus not reasonably calculated to provide Alex with educational benefits. *Id*. at 12. The crux of this issue is whether Alex is likely to have the same lack of success in the mainstream environment at Homewood Flossmoor that he had at the elementary district. It appears that the Fundamentals Program may provide Alex with some structure and supervision that the elementary district's program did not. *See*, *Id*. at 468. For instance, the Director of Student Support Services at the elementary district testified that the middle school lunchroom contained hundreds of students at a time and that supervision was not always close at hand. *Id*. at 437. In contrast, at the Homewood Flossmoor Fundamentals Program, aides accompany the students to lunch and PE, with one aide for every two students. *Id*. at 443, 445-46, 450.

However, there is enough evidence to support the hearing officer's conclusion that even this level of supervision would be inadequate for Alex. Alex's mother reported constant problems at the elementary district and noted that Alex was not allowed to stay in the lunchroom for even five minutes before school started because he behaved inappropriately toward the other students. *Id*. at 486. Others confirm Alex regresses to particularly immature behavior when surrounded by regular education peers. *Id*. at 481, 496, 499. Also notably, Alex's behavioral problems impeded his ability to learn at the elementary district. Pl. 56.1 at ¶¶ 4-5.

9

Most notable, however, is the large-scale environment at Homewood Flossmoor's high school. The high school is composed of two buildings housing over three thousand students including around four hundred special education students. Admin. Rec. at 453. The Fundamentals Program is self-contained, but Alex would still be exposed to the larger world of the school both generally and specifically during PE, school assemblies, and lunch. *Id*. at 453. The record shows that Alex is sensitive to noise and easily distracted, struggles with transitions and changes in his routine, and has a history of serious problems in a large, mainstream setting. He had social and behavioral problems and made negligible academic progress under similar conditions at the elementary district. In stark contrast, the smaller, quieter environment of Elim appears to work for Alex. *See*, *Id*. at 489. Alex made significant academic, social, and behavioral progress in his time at the smaller, very structured, special education only environment at Elim. *Id*. at 154, 190, 194. Thus, the record supports the hearing officer's decision that Alex's placement at Homewood Flossmoor's high school, much like his placement in a similar environment in the elementary district, would not provide Alex with educational benefits and indeed may incite his behavioral and academic problems. *See*, *Z.S.*, 295 F.3d at 676 (no basis for believing that Z.S. would have success at public school considering his poor history in the less-structured environment of a public school prior to moving to an institution where he was more successful).

**Least Restrictive Environment**

The IDEA requires that disabled students be educated with their non-disabled peers "to the "maximum extent appropriate." 20 U.S.C. § 1412(a)(5). That is, disabled students must be placed in the "least restrictive environment" appropriate. *Lagrange Sch. Dist. v. Ill. State Bd. Of Educ.*, 184

F.3d 912, 915-16 (7th Cir. 1999). This requirement creates a strong preference in favor of mainstreaming disabled students. *Id*.

Here, Homewood Flossmoor argues that Elim is not the least restrictive environment appropriate for Alex because it enrolls only special needs students and thus does not provide for interaction with non-disabled peers. Admin. Rec. at 9. However, mainstreaming is appropriate only if the child can receive an satisfactory education in a mainstream environment, *See*, *Beth B.*, 282 F.3d at 497; *Lachman v. Ill. State Bd. of Educ.*, 952 F.2d 290, 295 (7th Cir. 1988); *Ronker v. Walther*, 700 F.2d 1058, 1063 (6th Cir. 1983) (mainstreaming not appropriate when child would not benefit from mainstreaming, marginal benefits of mainstreaming are outweighed by benefits of services that could not be provided in a mainstream setting, or because child is a disruptive force in a nonsegregated setting), and the least restrictive environment requirement "was not developed to promote integration with non-disabled peers at the expense of other IDEA educational requirements." *Bd. of Ed. of Murphysboro v. Ill. State Bd. Of Ed.*, 41 F.3d 1162, 1168 (7th Cir. 1994).

The hearing officer held, and the Court agrees, that mainstreaming was part of the problem for Alex at the elementary district. Specifically, as discussed above, Alex exhibited severe behavioral as well as academic problems in the mainstream environment. In addition, Alex's mother testified that exposure to typically developing peer role models never benefitted him. Admin. Rec. at 486. Because Alex could not receive an appropriate education in the mainstream setting, sending him to Elim, admittedly a more restrictive environment, is appropriate. *See*, *Murphysboro*, 41 F.3d at 1168 (upholding placement at residential boarding school when mainstream setting was

11

inadequate); *MR v. Lincolnwood Bd. of Educ.*, 843 F.Supp. 1236, 1239-40 (N.D.Ill. 1994) (upholding placement in therapeutic day school rather than mainstream setting).

For the reasons stated above, Alex's Motion for Summary Judgment is granted, and Homewood Flossmoor's Motion for Summary Judgment is denied.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: May 1, 2008